**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Meek, | No. CV-16-08295-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Thomas Meek's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 21, "Def.'s Br."), and Plaintiff's Reply (Doc. 22, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now affirms the Administrative Law Judge's decision (R. at 22–32) as upheld by the Appeals Council (R. at 1–6).

**I.  BACKGROUND**

Plaintiff filed his Application on August 13, 2013 for a period of disability beginning March 26, 2013. (R. at 90.) Plaintiff's claim was denied initially on October 24, 2014 (R. at 125), and on reconsideration on July 22, 2015 (R. at 132.) Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on April 21, 2016. (R. at 40–87.) On July 7, 2016, the ALJ denied Plaintiff's Application. (R. at 22–32.) On October

20, 2016, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: anxiety, depression, moderate back pain aggravated by lifting, fatigue caused in part by severe non-positional obstructive sleep apnea, pain in the knees, ankles, and back, post-traumatic stress disorder, panic attacks, and obesity. (R. at 27.) The ALJ concluded that while "medical evidence establishes that [Plaintiff] has a history of treatment for the above-listed impairments, [] his allegations of severe symptoms are not supported by the clinical evidence." (R. at 26.) The ALJ, based on the recommendation of a Vocational Expert ("VE"), found that Plaintiff has the residual functional capacity ("RFC") for medium unskilled occupations such as hand packager, janitor, and dishwasher. (R. at 31.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

(citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by improperly discounting the opinions of Plaintiff's examining physicians without providing substantial evidence for her decision to do so; and (2) the ALJ erred by finding Plaintiff not credible. (Pl.'s Br. at 3.) In both arguments, Plaintiff alleges that the ALJ erred in reaching only the mental residual functional capacity. (Pl.'s Br. at 1.)

### A. The ALJ Did Not Err by Giving Little Weight to the Opinions of Plaintiff's Examining Physicians Because Her Decision Was Supported by Contradicting Substantial Evidence

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If an examining physician's opinion is uncontradicted, the ALJ must provide "clear and convincing reasons" for rejecting it. *Lester*, 81 F.3d at 830. If contradicted by other doctors, an examining physician's opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Normally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." *Lester*, 81 F.3d at 831. But in some cases, the Ninth Circuit has "upheld the Commissioner's decision to reject the opinion of a[n] . . . examining physician, based in part on the testimony of a nonexamining medical advisor." *Lester*, 81 F.3d at 831. For example, in *Magallanes v. Bowen*, the Ninth Circuit upheld an ALJ's decision to reject an examining physician's opinion because "the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of [Plaintiff's] treating physicians . . . there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant." *Id.* (explaining why the Ninth Circuit affirmed the ALJ's decision in *Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989)).

Here, the ALJ gave little weight to the opinions of two examining physicians who provided evidence of mental impairments which would render Plaintiff largely disabled. First, the ALJ discounted the opinion of Dr. Colin Joseph, who consultatively examined Plaintiff in September 2014. (R. at 27, 28.) Dr. Joseph diagnosed Plaintiff with post-

traumatic stress disorder and opined that Plaintiff would be incapable of "maintaining emotional stability and appropriate social behavior in a typical work environment," though he concluded that Plaintiff would "be able to recognize and respond to normative workplace hazards." (R. at 28.) The ALJ gave little weight to Dr. Joseph's opinion because "[t]his was a one-time examination, and Dr. Joseph is not [Plaintiff's] treating physician . . . [and] is less able to accurately evaluate [Plaintiff's] long-term functional capacity." (R. at 28.) The ALJ also noted that Dr. Joseph's opinion was "inconsistent with [Plaintiff's] appearance at the hearing," where he "was focused and answered questions clearly and calmly." (R. at 28.)

While the ALJ could not have permissibly concluded Dr. Joseph's opinion was unreliable simply because he only examined Plaintiff once, here the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount Dr. Joseph's opinion. In part, the ALJ relied on the testimony of Dr. Sheri Simon, a nonexamining physician. (R. at 28.) Dr. Simon opined that the medical evidence "supported capacity for work where interpersonal contact is incidental to work performed, e.g. . . . tasks [] learned and performed by rote [memorization], with few variables and little judgment." (R. at 28.) The ALJ found this opinion to be "consistent with the record as a whole" and "more consistent with [Plaintiff's] behavior at the hearing." (R. at 28.)

While the "opinion of a nonexamining physician cannot by itself constitute substantial evidence," the ALJ also relied on other evidence. *Lester*, 81 F.3d at 831. The ALJ cited testimony of Plaintiff's friend, Thomas Hopkins, who reported that the claimant "did yard work, visited with others, went in the garage, took care of his personal grooming needs, prepared simple meals, cleaned, did laundry, mowed, washed the cars, drove, shopped every week for a couple of hours, and watched television." (R. at 28.) *See* 20 C.F.R. § 404.1513(d)(4) (2013)[1] (allowing evidence from "other non-medical sources," including friends). The ALJ also gave great weight to Plaintiff's own testimony about his

---

[1] This version of 20 C.F.R. § 404.1513 applies to claims filed before March 27, 2017.

daily activities, which in 2014 he said included driving, preparing simple meals, doing chores around the house, shopping by computer, walking, and taking care of his personal grooming needs. (R. at 29.) *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("the ALJ may consider . . . the claimant's daily activities."). Lastly, the ALJ relied on Plaintiff's demeanor at the hearing, where she noted that Plaintiff "did look around, but was focused and answered questions clearly and calmly." (R. at 28.) While the ALJ's observations at the hearing, along with testimony from Mr. Hopkins and Plaintiff regarding daily activities, cannot on its own constitute substantial evidence for rejecting examining medical opinions, when combined with the contradicting opinion of a nonexamining medical advisor, there was substantial evidence to conclude that Dr. Joseph's opinion was not supported by the record as a whole.

For all these same reasons, the Court also finds that the ALJ did not err by giving little weight to the opinion of Nurse Practitioner Gregory. In largely disregarding Ms. Gregory's opinion, the ALJ noted that "Ms. Gregory is not an acceptable medical source." (R. at 28.) Plaintiff correctly points out that, as of 2017, nurse practitioners are "acceptable medical sources" under the definition in 20 C.F.R. § 404.1502(a)(7). (Pl.'s Br. at 9). But at the time Plaintiff filed his claim, nurse practitioners fell under the definition of "other sources," whose opinions are not entitled to the weight of a medical opinion. 20 C.F.R. § 404.1513(d)(1) (2013). Even under this definition, a nurse practitioner's opinion can receive great weight if "he or she has seen the individual more often than an [acceptable medical source], has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. § 404.1527(f)(1).[2] But here, Ms. Gregory only examined Plaintiff once and she provided no evidence more convincing or consistent with the record as a whole than did the state non-examining physician, Dr. Simon. Thus, even given the potential that a nurse practitioner's opinion could be elevated above that of an "acceptable medical source," the ALJ did not

---

[2] This section has since been amended, but still applies to all claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

err in giving little weight to Ms. Gregory's opinion for the same reasons she afforded little weight to Dr. Joseph's.[3]

### B. The ALJ Did Not Err by Finding Plaintiff's Testimony Not Credible

Plaintiff argues that the ALJ erred in rejecting his testimony about his mental impairment, and that the Court must now credit his statements as true. (Pl.'s Br. at 8.) Plaintiff is correct that an ALJ may reject a claimant's testimony only if she provides specific, clear, and convincing reasons for doing so. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). And that requirement is the key step of the Ninth Circuit's Credit-as-True rule. If the Court finds today that the ALJ did not provide legally sufficient reasons for rejecting Plaintiff's testimony, it must proceed to the third step which asks, "if the improperly discounted evidence were credited as true," is it clear that the ALJ would be required to award benefits on remand? *Id.* at 1022. If so, the Court may remand with instructions to award benefits. *Id.* But the key inquiry is first whether the ALJ provided clear and convincing reasons for finding Plaintiff's testimony not credible. The Court finds that she did. Thus, it is unnecessary to credit Plaintiff's statements as true and reach the final step of the Ninth Circuit's rule.

#### 1. The ALJ Did Not Harmfully Err by Considering Evidence of Plaintiff's Unemployment Benefits

The ALJ first considered evidence of Plaintiff's receipt of unemployment benefits as a strike against his credibility. (R. at 29.) Plaintiff argues "it is error for an ALJ to presume 'work' for unemployment purposes and 'work' for social security purposes are equivalent." (Reply at 6.) Plaintiff cites *Carmickle v. Commissioner*, 533 F.3d 1155, 1164

---

[3] Plaintiff also argues that the ALJ erred by failing to account for Dr. Powers, who signed off on Ms. Gregory's evaluation as her supervising physician. (Pl.'s Br. at 9.) But, the Court need not reach the issue of whether Dr. Powers should be treated as an examining physician despite never having examined the patient because it would not affect the Court's analysis. Dr. Powers' opinion (which is identical to Ms. Gregory's) was properly given little weight because the ALJ considered the testimony of Dr. Simon, Plaintiff, and Mr. Hopkins and concluded that Dr. Powers' opinion, communicated through Ms. Gregory's report, was unsupported by this evidence and by the record as a whole. Neither must the Court reach Plaintiff's argument about the ALJ's use of Plaintiff's global assessment of functioning ("GAF") scores because the ALJ had other legitimate and specific reasons supported by substantial evidence to conclude that the opinions of Ms. Gregory and Dr. Powers were entitled to little weight. (Pl.'s Br. at 10–11.)

(9th Cir. 2008) for this proposition. (Reply at 6.) *Carmickle* merely held that receipt of unemployment benefits "can undermine a claimant's alleged inability to work full-time," but because the record in that case did not "establish whether Carmickle held himself out as available for full-time or part-time work," reliance on his receipt of unemployment benefits was improper. 533 F.3d at 1161–62. By that logic, Plaintiff's receipt of benefits could only contradict testimony indicating he was unable to work even part-time. Under *Ghanim v. Colvin*, which Defendant cites, "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff received only two unemployment checks after applying for disability benefits, but those could conceivably lead the ALJ to believe that his testimony was unreliable because he held himself out as unable to work, even part-time. (Reply at 7; R. at 26.)

Thus, the ALJ's use of Plaintiff's unemployment benefits as evidence counting against his credibility was not error. And even if it were, the Court finds it would be harmless error because the ALJ supported her conclusion with other legally sufficient evidence. *See Carmickle*, 533 F.3d at 1162 (concluding that even where some evidence was relied upon in error, "[a]s long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless").

### 2. The ALJ Did Not Harmfully Err by Giving Great Weight to Testimony about Plaintiff's Daily Activities

Plaintiff also argues that the ALJ erred by finding that evidence of Plaintiff's daily activities contradicted his testimony. (Pl.'s Br. at 17–18.) An ALJ may consider testimony about a claimant's daily activities and may find that such testimony detracts from claimant's credibility when the activities contradict other testimony and the activities meet the "threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In other words, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Id.* (quoting

- 8 -

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The analysis here is admittedly different than in *Orn* and *Fair* because Plaintiff appeals the ALJ's credibility finding only as it pertains to his mental—not physical—condition. But it remains true that Plaintiff testified that he could not work at all and then at various points during his treatment told doctors that he participated in daily activities such as shopping, visiting with others, walking, mowing and weeding the yard, and going out alone. (R. at 29.) Plaintiff's friend also testified that Plaintiff lived in his guest house, visited with others, did yard work and house work, washed the cars, shopped every week, cleaned, and prepared simple meals. (R. at 28.)

It is unclear that any of these activities meet the threshold of pursuits "that are transferable to a work setting." *Fair*, 885 F.2d at 603. And "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). But the ALJ did not rely solely on evidence of Plaintiff's daily activities to make her finding that his testimony was not credible. It was merely one consideration. The ALJ also considered her personal observation of Plaintiff, various medical opinions, Plaintiff's continued receipt of unemployment benefits, his failure to attend several doctor appointments, and improvement of his condition upon changes to his medication. (R. at 27–29.)

These are all things an ALJ may consider, and cumulatively, they are clear and convincing reasons to discredit subjective testimony. The Ninth Circuit has held that, in order to meet that bar, the ALJ must "point to specific facts in the record which demonstrate that [Claimant] is in less pain than she claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). And while the case law discusses physical pain, Plaintiff points to no case that articulating a standard for testimony regarding a claim of mental disability. The ALJ did point to specific facts, as outlined above, and she considered things that the Ninth Circuit has sanctioned as acceptable evidence in a credibility determination, including "(1) ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements

concerning the symptoms . . . (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Together, all of the evidence that the ALJ considered amounts to clear and convincing reasons to discredit Plaintiff's testimony.

Finally, Plaintiff seems to suggest that the ALJ was not sufficiently clear in her finding that Plaintiff's testimony was unreliable.[4] (Pl.'s Reply at 7.) Plaintiff argues that the "ALJ did not state she found Plaintiff not credible," and that Defendant merely "cites the ALJ's summary of the evidence of record as an adverse credibility finding." (Reply at 7.) *Smolen* does require the ALJ to "state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." 80 F.3d at 1284. But the ALJ did that here when she recited Plaintiff's previous testimony about his daily activities, giving "great weight to the claimant's fairly wide range of daily activities and . . . little weight to the affected areas comments." (R. at 29.) She did so again after explaining Mr. Hopkins' testimony, and again when refuting Plaintiff's claims that "he is anxious, depressed, isolating, and fearful." (R. at 29–30.) This is sufficient indication that the ALJ discredited Plaintiff's testimony in favor of other evidence. And, as detailed above, this Court finds that the ALJ did so for clear and convincing reasons.

## IV. CONCLUSION

The ALJ did not err in discounting the opinion of examining physicians Dr. Joseph and Nurse Practitioner Gregory because she provided specific and legitimate reasons, supported by substantial evidence in the record, for doing so. Additionally, the ALJ did not err by discrediting Plaintiff's testimony because she articulated clear and convincing reasons for doing so. Accordingly, the Court affirms.

---

[4] The Court would suggest that Plaintiff himself was not clear enough in explaining which specific testimony of Plaintiff's the ALJ discredited at the hearing. Upon examination of the transcript, the Court assumes that Plaintiff objects to the ALJ's prioritization of other evidence over statements that Plaintiff made about his mental health at various points during the hearing. Some examples of those statements are provided at pages 56, 58, and 60 of the administrative record.

- 10 -

**IT IS THEREFORE ORDERED** affirming the July 7, 2016 decision of the Administrative Law Judge, (R. at 22–32), as upheld by the Appeals Council on October 20, 2016 (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 12th day of December, 2018.

_____
Honorable John J. Tuchi
United States District Judge